IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

JOHNNY PAUL WHITEHEAD, )
)
        Plaintiff, )
)
v. ) No. 13-1231-T
)
COMMISSIONER OF SOCIAL )
SECURITY ADMINISTRATION, )
)
        Defendant. )

ORDER REVERSING THE DECISION OF THE COMMISSIONER AND
REMANDING PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)

      Plaintiff has filed this action to obtain judicial review of Defendant Commissioner's final decision denying his application for disability insurance benefits under the Social Security Act ("the Act"). Plaintiff's application was denied initially and upon reconsideration by the Social Security Administration. After a hearing, an administrative law judge ("ALJ") issued an unfavorable decision on July 21, 2009. On March 26, 2010, the appeals council remanded the case to the ALJ for a second hearing. The ALJ again found that Plaintiff was not entitled to benefits.

      The appeals council denied Plaintiff's request for review, and the decision of the ALJ became the Commissioner's final decision. Plaintiff has filed this action, requesting reversal of the Commissioner's decision. For the reasons set forth below, the decision of the

Commissioner is REVERSED, and the action is REMANDED for additional testimony pursuant to sentence four of 42 U.S.C. § 405(g).

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party. "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Id. The court's review is limited to determining whether there is substantial evidence to support the Commissioner's decision, 42 U.S.C. § 405(g) and whether the correct legal standards were applied. Key v. Callahan, 109 F.3d 270, 273 (6th Cir.1997). See also Landsaw v. Secretary, 803 F.2d 211, 213 (6th Cir. 1986).

The Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly. Walters v. Commissioner, 127 F.3d 525, 528 (6th Cir.1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984). When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion. Foster v. Halter, 279 F.3d 348, 353 (6th Cir.2001); Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986). "[W]hen there is not substantial evidence to support one of the ALJ's factual findings and his decision therefore must be reversed, the appropriate remedy is not to award benefits. The case can be remanded under sentence four of 42 U.S.C. § 405(g) for further consideration." Faucher v. Secretary, 17 F.3d 171, 175 (6th Cir. 1994).

Pursuant to sentence four, a district court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court may immediately award Plaintiff benefits "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." Id. at 176 (citations omitted). "A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." Id. These factors are not present in this case, and, therefore, an immediate award of benefits is not appropriate. However, a remand pursuant to sentence four of § 405(g) is appropriate because all essential issues have not been resolved.

Plaintiff was born on February 5, 1963, and he was forty three years old at the time of the filing of his application for benefits on September 1, 2006. R. 8. He was forty five years old when the ALJ issued the unfavorable decision on July 21, 2009. R. 83-93. Plaintiff has a seventh grade education. R. 25. He previously worked as a tire repairer, skidder operator, and timber cutter, R. 25, 36-39, 53, 68-69 214, 220, 224, and he alleges disability beginning March 15, 2002, due to back problems. R. 219.

The ALJ enumerated the following findings: (1) Plaintiff met the insured status requirements of the Act through December 31, 2007; (2) Plaintiff has not engaged in substantial gainful activity since his alleged onset date of disability; (3) Plaintiff has lumbar degenerative disc disease, disorder of the left knee, and borderline intellectual functioning which meet the definition of "severe" based on the requirements of the Act, but he does not

have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4; (4) Plaintiff has the residual functional capacity to perform light work except Plaintiff can occasionally lift up to twenty pounds, frequently lift ten pounds, and occasionally carry ten pounds; he can sit thirty minutes, stand thirty minutes, and walk fifteen minutes at a time for a total of four hours sitting, four hours standing, one hour walking in an eight-hour workday; he can occasionally perform overhead reaching, frequently perform all other reaching, and frequently push/pull using his hands; he can continuously handle, finger, and feel objects; and he can frequently operate foot controls using his right lower extremity but is limited to occasional operation of foot controls using his left lower extremity; Plaintiff can occasionally crawl, crouch, kneel, stoop, balance, and climb stairs and/or ramps but should avoid climbing ladders, ropes, or scaffolds and unprotected heights; he can frequently operate a motor vehicle or perform work involving moving mechanical parts; he has moderate limitations in his ability to understand, remember, and carry out simple instructions, make judgments on simple work-related decisions, and sustain concentration and persistence; he has marked limitations in his ability to understand, remember, and carry out complex instructions and make judgments on complex work-related decisions; and he has no limitations in his ability to interact appropriately with coworkers, supervisors, and the public on a sustained basis or respond appropriately to usual work situations and changes in a routine work setting; (5) Plaintiff is unable to perform his past relevant work; (6) Plaintiff was a younger individual on the alleged onset date, has a limited education, and is illiterate; (7) Considering Plaintiff's age, education, work experience, and

residual functional capacity, there is a significant number of jobs in the national economy that Plaintiff could perform; (8) Plaintiff was not under a disability as defined in the Act at any time through the date of the decision.

The Social Security Act defines disability as the inability to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1). The claimant bears the ultimate burden of establishing an entitlement to benefits. Born v. Secretary, 923 F.2d 1168, 1173 (6th Cir. 1990). The initial burden of going forward is on the claimant to show that he is disabled from engaging in his former employment; the burden of going forward then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Id.

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

> 1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2. An individual who does not have a severe impairment will not be found to be disabled.
>
> 3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.
>
> 4. An individual who can perform work that he has done in the past will not be found to be disabled.
>
> 5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Willbanks v. Secretary, 847 F.2d 301 (6th Cir. 1988). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. § 404.1520(a). Here, the sequential analysis proceeded to the fifth step. The ALJ found that, although Plaintiff could not perform his past relevant work, he is able to perform other work existing in the national economy.

According to Plaintiff, substantial evidence does not support the ALJ's finding that his condition does not meet the requirements of Listing § 12.05, 20 C.F.R. pt. 404, subpt. P, app. 1, at the third step of the sequential analysis. Plaintiff's argument is well-taken.

The burden of proof at the listing level of the sequential evaluation process is on the claimant.[1] In order for a claimant to show that his impairment matches a listing, the impairment must meet specified medical criteria. See Zebley v. Sullivan, 493 U.S. 521, 530 (1990). The Part A criteria establish the existence of a mental impairment (diagnosis), not severity. The Part B criteria assess the severity of the mental impairment in functional terms, while the Part C criteria establish an alternative means of establishing severity. See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A.

Listing § 12.05 provides:

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
. . .

---

[1] At the third step in the evaluation of disability, a claimant is determined to be disabled if he has an impairment that meets or equals one of the Medical Listings in Appendix 1 of Subpart P and meets the durational requirement. 20 C.F.R. § 404.1 520(a)(4)(iii) and § 416.920(a)(4)(iii).

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function....

In order to meet Listing 12.05(C), a claimant's impairment must satisfy the diagnostic description in the introductory paragraph to 12.05 and the criteria in paragraph C of 12.05. See 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A) (Introduction). Thus, Listing 12.05(C) involves three criteria: (1) intellectual disability (f/k/a mental retardation), i.e., significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before the age of twenty-two; and (2) a valid verbal, performance or full scale IQ of 60 through 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function. See 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05C. A claimant may meet or equal Listing 12.05(C) only if he meets or equals all three elements. 20 C.F.R. §§ 404.1525-1526; West v. Commissioner, 2007 WL 1991059 (6th Cir.) (A claimant must make three showings to satisfy Listing 12.05(C)).[2]

In the present case, Plaintiff has shown that he meets the second criterion of Listing 12.05(C). Dr. Ann Phyfer found Plaintiff's Verbal IQ to be 61 and his Full Scale IQ to be 68. R. 552. Dr. William Fulliton found Plaintiff's full scale IQ to be 57 and his verbal IQ to

---

[2] DSM–IV and Listing 12.05(C) assume that many, if not most, mildly mentally retarded individuals will be able to work. However, some mildly mentally retarded individuals may be unable to work when they have 'a physical or other mental impairment imposing an additional and significant work-related limitation of function.' 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.05(C)." See also Muntzert v. Astrue, 502 F. Supp.2d 1148, 1157–58 (D. Kan.2007).

7

be 58. R. 563. Dr. David Pickering found Plaintiff's verbal IQ of 67. R. 706. Thus, Plaintiff met the IQ criteria of either a full scale, performance, or verbal IQ of less than 71.

Additionally, Plaintiff has "a physical or other mental impairment imposing an additional and significant work-related limitation of function" in that the ALJ found that he has severe impairments of lumbar degenerative disc disease and disorder of the left knee. This satisfies the third criterion of Listing 12.05. The matter in dispute is whether substantial evidence supports the ALJ's finding that Plaintiff failed to prove that he had the requisite deficits in adaptive functioning to satisfy criterion one, i.e., "significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period."[3]

In making his finding that Plaintiff had not shown deficits in adaptive functioning, the ALJ looked at Plaintiff's activities of daily living and his work history as not being "reflective of significant intellectual limitation." R. 20.

> The claimant is able to bathe, dress himself, care for his personal hygiene, drive, follow television programming, perform household chores, prepare meals, perform simple arithmetic, and care for a young child. The claimant's mother testified that the claimant is able to navigate to new locations independently after [giving] directions. It is significant that none of the claimant's treating physicians ever assessed him as mentally retarded. If the claimant's intellect was as low as testing indicates it could not have escaped the notice of a physician. Moreover, the claimant's past relevant work is semi-skilled, and he worked at substantial gainful activity levels from 1988 to the end of 2001. His performance of these activities and his ability to earn substantial gainful activity for years at semi-skilled labor are plainly

---

[3] "Adaptive functioning" includes the claimant's "effectiveness in areas such as social skills, communication, and daily living skills." West v. Commissioner, 240 F. App'x 692, 698 (6th Cir.2007) (citing Heller v. Doe by Doe, 509 U.S. 312, 329 (1993)).

inconsistent with an IQ of 68. Considering the claimant's test results and his activities of daily living, the Administrative law Judge finds the claimant operates within the borderline levels of intellectual suffering, but that it is not a disability condition.

Id. (citations omitted).

Contrary to the ALJ's statement ("It is significant that none of the claimant's treating physicians ever assessed him as mentally retarded."), Listing 12.05(C) does not require that a formal diagnosis of mental retardation be made; instead, it requires only that one of the three IQ scales be within the 60-70 "mildly mentally retarded" range; two of the three scales could be anything, including "superior intelligence" range scores, precluding a diagnoses of "mildly mentally retarded." See Thomas v. Commissioner, 2010 WL 1254788 (N.D. Ohio) ("With respect to Thomas' argument that a diagnosis of mental retardation after age 22 is not a requirement of the introductory paragraph of Listing 12.05, the Commissioner has, appropriately, conceded this point of law. There is no authority for the proposition that Thomas must be able to point to a diagnosis of mental retardation in order to satisfy the diagnostic description.")[4]; Lowes v. Commissioner, 2013 WL 4413751 (E.D.Mich.) ("[A] formal medical diagnosis of mental retardation is not conclusive one way or the other.")

---

[4] The Thomas court further expanded:

To be clear, however, there is also no authority for the proposition that the absence of a diagnosis of mental retardation is necessarily fatal to the claimant's case with respect to the introductory paragraph of Listing 12.05(C). Instead, the ALJ must evaluate the entire record and determine whether the claimant satisfies the diagnostic description, and, upon review, this Court must decide whether substantial evidence supports the ALJ's determination.

2010 WL 1254788 at *11-12.

As for Plaintiff's activities of daily living, it is not evident that those activities (tending to his personal hygiene, driving, watching television, performing simple arithmetic, and caring for a young child) are inconsistent with mild mental retardation. As pointed out by Plaintiff, the activities cited by the ALJ are taken from the report of Dr. Phyfer, a clinical psychologist, who diagnosed Plaintiff with mild mental retardation based on that level of functioning. Furthermore, individuals performing in the mild mental retardation range are capable of performing such activities.

> People with this level of Mental Retardation typically develop social and communication skills during the preschool years (ages 0-5) years), have minimal impairment in sensorimotor areas, and often are not distinguishable from children without Mental Retardation until a later age. By their late teens, they can acquire academic skills up to approximately the sixth-grade level. During their adult years, they usually achieve social and vocational skills adequate for minimum self support, but they need supervision, guidance and assistance, especially under unusual social or economic stress. With appropriate supports, individuals with Mild Mental Retardation can usually live successfully in the community, either independently or in supervised settings.

*Diagnostic and Statistical Manual of Mental Disorders*, 4th ed. (American Psychiatric Association). On remand, the extent to which Plaintiff's daily activities is evidence that he does not have deficits in adaptive functioning must be clarified.

The ALJ concluded that Plaintiff's work history showed intellectual capacity greater than his IQ scores suggested. The government cites Foster v. Halter, 279 F.3d 348 (6th Cir. 2001), for the proposition that Plaintiff's prior work activity as a chainsaw operator and tire changer is evidence that he did not have significant adaptive functioning deficits. In Foster, the court reasoned that, because the claimant had worked as a bank accounting clerk and

liquor store clerk, she was capable of complex job activity after her twenty-second birthday. Id. at 355. Plaintiff's past relevant work was classified as heavy, semi-skilled work. As noted by Plaintiff, neither sawing trees or loosening and tightening wheel lug nuts suggests intellectual capacity beyond that found by the psychologists who examined Plaintiff and who each concluded that he met the diagnostic criteria for mild mental retardation.

The Government also cites Justice v. Commissioner, 2013 WL 645957 (6th Cir.), for the proposition that "substantial work history" and "extensive prior work history" prove that a claimant lacks adaptive functioning deficits. In contrast to Justice, who acknowledged basic reading and mathematical proficiency and was diagnosed as having borderline intellectual functioning, Plaintiff is illiterate and was diagnosed as mentally retarded by three examining psychologists.

Courtier v. Commissioner, 479 F. App'x 713 (6th Cir. 2012), is also cited by the Government. In that case, the claimant's school records showed a prior, higher IQ score of 76, and the school psychologist opined that the claimant's poor academic performance was not due to the fact that he was a slow learner but, instead, due to the claimant's difficult home life and failure to attend classes. Here, Plaintiff had no school IQ test scores, and no evidence was presented that his poor academic performance was the result of anything other than poor intellectual functioning.

Because there is no evidence in the record that the mere fact of Plaintiff's work history proves intellectual capacity greater than his IQ scores suggested, the ALJ's finding must be reversed and the matter remanded for a determination as to whether Plaintiff has the requisite

11

deficits in adaptive functioning to satisfy criterion (1) "significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period" and, if so, whether the deficits were manifested before Plaintiff's twenty-second birthday.

Having determined that the decision must be reversed, the court must determine whether it is appropriate to remand this case or to direct the payment of benefits. Because the record does not establish that Plaintiff is entitled to benefits or that all essential facts have been resolved, it is appropriate to remand this case for further proceedings.

In summary, the decision of the Commissioner is REVERSED, and the action is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for a reassessment of whether Plaintiff meets the requirements of Listing 12.05.

The clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

    s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE